UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TAPPAN ZEE CONSTRUCTORS, LLC,<br><br>        Plaintiff,<br><br>  -against-<br><br>X-TEC AG,<br><br>        Defendant. | Case No.<br><br><br>**COMPLAINT**<br>**and JURY DEMAND** |

Plaintiff, by Peckar & Abramson, P.C., its attorneys, for its complaint against defendant, alleges as follows:

**Parties**

1. Plaintiff, Tappan Zee Constructors, LLC ("TZC") is a limited liability company duly organized and existing under the laws of Delaware, and duly registered to do business in the State of New York.

2. On information and belief, defendant X-Tec AG is a foreign corporation duly organized and existing under the laws of Switzerland with its principal place of business at Trogenerstrasse 4 - 9450 Altstätten SG, Switzerland.

3. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(2) because the amount in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between a citizen of the United States and a citizen of a foreign state.

4.  Venue is proper pursuant to 28 U.S.C. §§1391(b) and (f) because a substantial part of the events or omissions giving rise to the claim occurred in this District.

## Facts Common to all Counts

5.  By written agreement executed as of November 30, 2012, between TZC and the New York State Thruway Authority, designated Contract D214134, TANY 12-18B (the "Contract"), TZC agreed to perform certain design and construction services, and to perform the labor and furnish the equipment and material for the construction of two new bridge structures between Rockland County and Westchester County over the Hudson River (the "Project").

6.  Thereafter, pursuant to a written agreement entered as of May 20, 2013 (the "Maxon Agreement"), Maxon Industries, Inc. ("Maxon") agreed to design, manufacture and supply two concrete batch plants, including silos and other appurtenances (individually "Batch Plant No. 1" and "Batch Plant No. 2" and together the "Batch Plants"), and to provide related technical support, all in accordance with the requirements of the Contract and Project, for which TZC agreed to pay Maxon the consideration set forth in the Maxon Agreement.

7.  On information and belief, Maxon entered into an agreement with X-Tec AG, pursuant to which X-Tec AG agreed to provide certain designs and components of the Batch Plants, including of the silos, all in accordance with the requirements of the Maxon Agreement, the Contract and Project (the "X-Tec AG Agreement").

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

8. On information and belief, X-Tec AG performed its work and services referred to in this Complaint, in whole or in part, jointly and in concert with its parent company X-Tec Swiss AG and with its related company X-Tec North America LLC.

9. X-Tec AG bears responsibility for the acts or omissions of its parent company X-Tec Swiss AG and its related company X-Tec North America LLC.

10. X-Tec AG knew that the Batch Plants were to be mounted on marine barges and used on the Hudson River.

11. X-Tec AG knew of the conditions and criteria to which the Batch Plants and all of their components, including the silos, had to be designed, constructed and supplied, in order to be mounted on marine barges and used on the Hudson River.

12. TZC duly performed all of the terms and conditions of the Maxon Agreement to be performed on its part.

13. X-Tec AG designed, manufactured and supplied the Batch Plants, including the silos and appurtenances thereto.

14. After the Batch Plants were supplied, TZC used the Batch Plants, including the silos and appurtenances thereto, in the manner and for the purpose they were intended.

15. On December 16, 2014, a silo that was part of Batch Plant No. 1 collapsed and pulled down the two adjacent silos, causing all three silos on Batch Plant No. 1 to collapse.

16. TZC notified X-Tec AG of the collapse and investigated the cause of the Batch Plant No. 1 silo collapse and the condition of the silos on Batch Plant No. 2.

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

17. TZC determined that the silos on Batch Plant No. 1 were defective and that the silos on Batch Plant No. 2 were similarly defective.

18. TZC was compelled to stop using the Batch Plants and required to materially alter its concrete operations until it determined and effectuated appropriate modifications and repairs to the Batch Plants and obtained a third batch plant to supplement its operations.

19. X-Tec AG's acts or omissions, including deficient and inadequate structural design of the silos in accordance with applicable silo-design code service loads, and its failure to construct hopper and vertical wall steel plating thicknesses in accordance with its own fabrication shop drawings, caused the collapse.

20. TZC could not by the exercise of reasonable care have discovered the defects or perceived their danger or otherwise have averted its injuries.

21. TZC incurred significant additional and increased costs of construction and suffered disruptions and delays to its concrete operations on the Project by reason of X-Tec AG's acts or omissions.

## Count One
### (Third Party Beneficiary)

22. On information and belief, under the terms of the X-Tec AG Agreement, X-Tec AG, among other things, agreed to provide certain drawings and calculations for the design of the Batch Plants as well as certain parts for its manufacture.

23. The X-Tec AG Agreement was intended for TZC's benefit.

24. X-Tec AG knew that the X-Tec AG Agreement was for TZC's benefit and that benefit was immediate not incidental.

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

- 4 -

25. By reason of its aforementioned acts or omissions, X-Tec AG breached the X-Tec AG Agreement, and TZC incurred additional and increased costs of labor, supervision, equipment, materials, field support, overhead and other costs of construction in an amount to be determined, but which is believed to be not less than $25,708,406, which amount is now justly due and owing from X-Tec AG to TZC with appropriate interest thereon.

## Count Two
### (Breach of Implied Warranty)

26. X-Tec AG is a merchant within the meaning of the New York's Uniform Commercial Code §2-104(1), is engaged in the sale of goods within the meaning of Uniform Commercial Code §2-104(1) and §2-105(1), and the Batch Plants are goods within the meaning of Uniform Commercial Code §2-105(1).

27. By selling the Batch Plants in the course of its businesses, X-Tec AG implicitly warranted that the Batch Plants, including the silos, were merchantable, fit for the ordinary purpose for which they were designed and manufactured, and fit, safe and suitable instruments for use on the Project in the manner in which they were intended.

28. In reliance on X-Tec AG's skill and judgment and the implied warranties of fitness and merchantability, TZC purchased the Batch Plants for use on the Project, including the silos.

29. The Batch Plants, in particular the silos and appurtenances, were not of merchantable quality. They were unfit, unsafe, and unusable for the purpose for which they were intended, resulting in the collapse of one of the silos on Batch Plant No. 1, which caused the collapse of the other silos on Batch Plant No. 1.

30. The silos designed, manufactured and supplied by X-Tec AG for Batch Plant No. 2 were similarly unfit, unsafe, and unusable for the purpose for which they were intended.

31. X-Tec AG's acts or omissions constitute a breach of its implied warranty of merchantability and fitness, and were the direct and proximate cause of the injuries and damages sustained by TZC.

32. By reason of X-Tec AG's breaches of its implied warranties, TZC incurred additional and increased costs of labor, supervision, equipment, materials, field support, overhead and other costs of construction in an amount to be determined, believed to be not less than $25,708,406, which amount is now justly due and owing from X-Tec AG to TZC with appropriate interest thereon.

## Count Three
### (Products Liability – Negligence)

33. X-Tec AG was the designer, manufacturer and supplier of the Batch Plants, including the silos and appurtenances thereto.

34. X-Tec AG failed to exercise reasonable care in designing, making and supplying the silos and appurtenances thereto for their intended or foreseeable uses.

35. X-Tec AG's negligence in designing, manufacturing and supplying the silos and the appurtenances thereto was a direct and proximate cause of the collapse and the damages incurred by plaintiff.

36. By reason thereof, TZC incurred additional and increased costs of labor, supervision, equipment, materials, field support, overhead and other costs of construction in an amount to be determined, but which is believed to be not less than $25,708,406,

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

which amount is now justly due and owing from X-Tec AG to TZC with appropriate interest thereon.

## Count Four
### (Products Liability – Strict Liability)

37. X-Tec AG's defective design and manufacturing errors caused the Batch Plants, including the silos and appurtenances, to be defective and unsafe.

38. It was feasible to design and manufacture the Batch Plants, including the silos and appurtenances, so that the Batch Plants could be operated in a safe manner for the purpose for which they were intended.

39. X-Tec AG's defective design and manufacturing errors were a proximate cause of the failure of the silos and plaintiff's damages.

40. By reason thereof, TZC incurred additional and increased costs of labor, supervision, equipment, materials, field support, overhead and other costs of construction in an amount to be determined, but which is believed to be not less than $25,708,406, which amount is now justly due and owing from X-Tec AG to TZC with appropriate interest thereon.

## Count Five
### (Malpractice)

41. X-Tec AG owes a duty to TZC to perform its design services with reasonable care, technical skill, ability, and diligence ordinarily required of an engineer designing a concrete batch plant.

LAW OFFICES

Peckar &
Abramson
A Professional Corporation

42. X-Tec AG acted negligently and breached its duty of care by, among other things, providing an inadequate structural design of the silos under applicable silo-design code service loads.

43. X-Tec AG knew or should have known of the dangers and inadequacy of the design it provided and used to manufacture and supply the Batch Plants, including the silos and appurtenances thereto.

44. As a proximate consequence of X-Tec AG's conduct, TZC incurred additional and increased costs of labor, supervision, equipment, materials, field support, overhead and other costs of construction in an amount to be determined, believed to be not less than $25,708,406, which amount is now justly due and owing from X-Tec AG to TZC with appropriate interest thereon.

WHEREFORE, plaintiff demands judgment against X-Tec AG in the sum of $25,708,406, with appropriate interest thereon, together with the costs and disbursements of this action.

## Demand for a Jury Trial

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiff demands trial by jury in this action of all issues so triable.

Dated: April 13, 2016

                                      PECKAR & ABRAMSON, P.C.
                                      Attorneys for Plaintiff

By: _____
      David Fultz (DF-7233)
      41 Madison Avenue, 20th Floor
      New York, New York 10010
      (212) 382-0909

#445567

LAW OFFICES

Peckar & Abramson
A Professional Corporation